# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RICKY R. FRANKLIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action File No.** |
| | ) **1-19-CV-03853-MLB** |
| **GEORGIA POWER COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

---

**DEFENDANT GEORGIA POWER COMPANY'S RESPONSES TO**
**PLAINTIFF RICKY R. FRANKLIN'S FIRST INTERROGATORIES**
**DIRECTED TO DEFENDANT**

Defendant Georgia Power Company ("Georgia Power") responds to Plaintiff Ricky R. Franklin's ("Plaintiff") First Interrogatories to Defendant as follows:

**RESERVATIONS AND LIMITATIONS**

1.      Georgia Power's responses and objections are made solely for the purposes of the above-styled action. Georgia Power reserves it right to make all objections as to competency, relevancy, materiality, propriety, and admissibility, and any and all other objections and grounds that would require the exclusion of any statement made herein, if such a statement were made by a witness present and testifying in court, and may interpose such objections at the time of trial, should there be a trial in this matter.

2.      Given the ongoing COVID-19 pandemic, Georgia Power's employees have limited access to their offices and documents; therefore, Georgia Power specifically reserves the right to amend, modify, or supplement its responses to these interrogatories if additional information is

located. Georgia Power further reserves the right to raise further objections as and when appropriate.

3.      These reservations and limitations are expressly incorporated into each of Georgia Power's specific responses set forth below and are made without waiver of any objections raised below.

## RESPONSES TO INTERROGATORIES

1.      Identify each and every person having knowledge of the facts or formed opinions relating to any of the events or allegations underlying this lawsuit or defense of it. Your answer should include each of your employees or agents who have been identified in the answers to these interrogatories, whose names or employee identification numbers appear on any documents, produced by you, or handled or supervised any matters in connection with any of your communications with Mr. Franklin.

**RESPONSE: Georgia Power objects to Interrogatory No. 1 because it seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product or privileged attorney-client communication, or is otherwise privileged, as there are persons having knowledge or opinions related to this case solely as a result of communications with counsel.**

**Georgia Power further objects to this Interrogatory as it is overbroad and unduly burdensome. Assuming Georgia Power could have knowledge of whether someone has "formed an opinion" or "has knowledge", Plaintiff's request that Georgia Power identify every person with knowledge or an opinion relating to any of the events or allegations**

underlying this lawsuit or any defense is not proportional to the needs of this case under Federal Rule of Civil Procedure 26(b).

Georgia Power further objects to this Interrogatory because it is redundant with Plaintiff's other Interrogatories, as shown by the demand that Georgia Power identify here employees or agents identified in answers to other Interrogatories.

Subject to these objections, and without waiving same, Jeremy Bowden, Supervisor of Application Development with Southern Company Services, has knowledge of Georgia Power's telephone-based communications regarding PrePay accounts. Jared Gilstrap, Senior Director of Product with EnergyComNetwork, Inc. ("PayGo"), has knowledge of that company's hardware and software used in providing services to Georgia Power. Martin Price, Director, Solutions Engineering, with Twilio Inc., has knowledge of that company's hardware and software used in providing services to Georgia Power.

2.      Explain in detail, from start to finish, i.e., step 1 to completion; how each and every call/text were placed by your employees to send text messages to Mr. Franklin's cellphone. State if each call was initiated using an automated telephone dialing system.

RESPONSE: Georgia Power objects to Interrogatory No. 2 to the extent it is predicated on erroneous assumptions or to the extent it states incorrect facts. Georgia Power did not make any voice calls to the phone number at issue in the Complaint. Subject to and without waiving this objection, Georgia Power responds as follows:

On November 11, 2016, a Georgia Power customer holding account number 32309-49222, which is a "PrePay" account (active from November 10, 2016, to November 24, 2018)

3

(the "Account"), consented to receive text messages from Georgia Power at phone number (404) 287-4934 (the "Phone Number"). The Phone Number was provided to Georgia Power by the Account customer. The Account customer, as noted above, selected to receive text-based notifications, consenting to same. Georgia Power's records contain no record of any opt-out or revocation of that consent.

Generally for PrePay accounts (like the Account), a customer deposits funds against which Georgia Power draws as that customer consumes Georgia Power's utility services. Further, customers, like the Account holder, may select preferences for notifications that issue after Triggering Events (defined below) occur. When the customer established the Account with Georgia Power, Georgia Power transmitted the customer's information, including the Phone Number, to PayGo, which provides a platform for Georgia Power that allows Georgia Power's customers to monitor their PrePay accounts. Only the customer or a Georgia Power Customer Service Representative, at a customer's direction, can enter data, such as a phone number, concerning notification preferences. Georgia Power only enters or transmits phone numbers provided to it by its customer to PayGo. It is not possible—and it did not occur here—for a number to be generated (whether randomly, sequentially, or otherwise) in Georgia Power's PrePay customer account systems. PayGo has provided this service in substantially and materially the same form since 2014.

PayGo monitors customers' PrePay accounts for the occurrence of certain events ("Triggering Events"), such as a low balance. When a Triggering Event occurs, PayGo's system notifies Georgia Power that a Triggering Event has occurred and the phone number associated with the account on which the Triggering Event occurred.

Upon receipt of this individualized, account-specific notification, Georgia Power's system generates a text-based message, drafted by Georgia Power, to send to the customer concerning the event at the phone number associated with the relevant account. Georgia Power then sends an instruction, or "application programming interface request" ("API request") to a third-party vendor, Twilio Inc., who provides a service connecting Georgia Power's software to telecommunications networks. Each API request contains: (i) the phone number to which the message is to be sent, (ii) reference to valid Twilio-owned phone numbers assigned to Georgia Power from which to send the message, and (iii) the message's text content, which never does nor could include an artificial or pre-recorded voice message or audio content of any kind.

On receipt of that message-specific instruction, the message is sent, individually, to the target customer by being pushed into the telecommunications network. No aggregation, collection, or batching occurs. Only a targeted, individual message in response to the individual, account-specific Triggering Event issues. Every message Georgia Power transmits to Twilio requires an individual instruction. Stated differently, not only does aggregation not occur, it is not possible. Neither Georgia Power nor Twilio produces or generates recipient phone numbers for the purposes of sending SMS text messages via the system described herein.

All of the text messages Georgia Power sent to the Phone Number were sent using the above-described process, and Georgia Power's records indicate the only communications it sent to the Phone Number were text messages. Georgia Power did not make any voice calls to the Phone Number of any nature, including without waiver calls employing an artificial

5

or pre-recorded voice. None of the messages were sent using an "automated telephone dialing system", as that term is defined for purposes of the TCPA. No system maintained by Georgia Power for communication with PrePay customers, including the Account customer, or that were used to contact the Phone Number, has or ever had the capacity to (1) store numbers using a random or sequential number generator, (2) produce numbers using a random or sequential number generator, or (3) generate telephone numbers by any means. All telephone numbers must be manually entered, one-by-one, into these systems.

3.    Explain in detail, from start to finish, i.e., step 1 to completion; how your pre-recorded alerts works to send messages to your customers.

**RESPONSE: Georgia Power objects to the use of the term "pre-recorded alerts". The TCPA regulates "artificial or prerecorded voice" messages, not "pre-recorded alerts". The statute makes clear that it is only audio messages that matter with regards to "pre-recorded" messages. As such, to the extent "pre-recorded alerts" refers to anything other than audio messages, Georgia Power objects. Georgia Power further objects to Interrogatory No. 3 because the Interrogatory seeks information relevant only, if ever, to calls placed with a pre-recorded voice message, and Georgia Power Company did not make any voice calls—pre-recorded or otherwise—to the Phone Number. Furthermore, the allegations of the Complaint refer exclusively to text messages. As such, discovery concerning voice calls is irrelevant and overly broad, and responding to it thereby unduly burdensome, and not proportional to the needs of this case**

6

State the total number of automated messages, including date and time or each individual calls/text placed to the Plaintiff's cell phone as described in the complaint.

**RESPONSE: Georgia Power objects to this Interrogatory, which Plaintiff has not numbered, to the extent it is predicated upon erroneous assumptions or to the extent it states incorrect facts. Georgia Power did not make any voice calls to the Phone Number, nor are such calls alleged in the Complaint. Georgia Power further objects to this Interrogatory as vague and ambiguous because "automated" lacks clarity as it makes no indication to which part of the process of sending communications it refers or whether human intervention in a mechanical or programmed process could render a message not "automated." Subject to and without waiving these objections, Georgia Power, pursuant to Federal Rule of Civil Procedure 33(d), directs Plaintiff to the spreadsheet produced in response to Request for Production No. 8, which contains an exhaustive list of communications sent by Georgia Power to the phone number to which the Complaint refers. That list does not contain any "automated messages", because no such messages exist. Nor does that list contain any "calls", because no voice calls occurred.**

4.      State and Identify the name, address, and phone number, date and time for each and every agent of the Defendant GPC or any person or entity placing calls by or on behalf of for the benefit of GPC which includes any and all other third parties involved in placing calls to Plaintiffs cellphone.

**RESPONSE: Georgia Power objects to Interrogatory No. 4 to the extent it is predicated upon erroneous assumptions or to the extent it states incorrect facts. Georgia**

7

Power did not make any voice calls to the Phone Number, nor are any such calls alleged in the Complaint. Furthermore, subpart (a) to this Interrogatory indicates it requests information concerning a "marketing firm." The Complaint does not allege any marketing firm made any call or sent any text message to the Phone Number, and Georgia Power did not engage any such firm to make any calls or send any messages to the Phone Number. As such, *any* discovery concerning voice calls or a "marketing firm" is irrelevant and overly broad, and responding to it thereby unduly burdensome, and not proportional to the needs of this case.

Subject to and without waiving these objections, no such agents or individuals exist. For further information, and subject to the same objections as stated in the preceding sentence, Georgia Power incorporates by reference its objections and response to Interrogatory No. 2.

a.     In identifying the third party marketing firm in interrogatory 4, please state the relationship of the marketing firm and whether or not the marketing firm was acting on behalf of GPC.

**RESPONSE: Georgia Power incorporates by reference its objections to Interrogatory No. 4. Subject to these, no such marketing firm exists.**

5.     By forum, case number, amount of any settlement or judgment and party, name each lawsuit which you have defended or are defending now, and in the past three years involving allegations of violations of the TCPA.

8

RESPONSE: Georgia Power objects to Interrogatory No. 5 because it is unduly burdensome as it seeks publicly available information just as easily accessed by Plaintiff as by Georgia Power. Further, information concerning lawsuits requested in the Interrogatory is irrelevant to proving any element of any claim or defense in this suit. Georgia Power further objects because the fact a suit was filed has no relation to whether the suit itself has or had any merit, whether liability was established, or whether judgment was entered against Georgia Power. Even if liability were established in a prior suit, it would not indicate that Georgia Power had violated the TCPA or that such court records would be admissible here. Neither would the amount of settlement in a separate case have any bearing on the facts in this case. In fact, any information about any settlement is even less germane to the issues in this matter than the irrelevant requested court records, because such settlements would not even reflect a finding of fact or law. Indeed, settlements exist for the stated purpose of *compromising* positions wherein parties accept results different than what they would expect in a litigated result in order to ensure certainty. As such, information related to settlements is even less relevant than the requested court records. Therefore, any discovery into other lawsuits involving Georgia Power is irrelevant and overly broad, and responding to it thereby unduly burdensome, and not proportional to the needs of this case. Finally, Georgia Power objects to this Interrogatory to the extent it seeks information protected by confidentiality agreements.

6.    Describe in detail how a staff employee initiates text messages from your system to Mr. Franklin's cellphone for its clients or customers. Additionally, describe the system, to include its name and how it works to send messages to Mr. Franklin's cellphone.

**RESPONSE: Georgia Power objects to Interrogatory No. 6 to the extent it assumes erroneous facts or to the extent it states incorrect facts.**

**Subject to and without waiving that objection, Georgia Power incorporates by reference its objections and response to Interrogatory No. 2.**

7.    Identify each person responsible for your formulating, supervising, or enforcing your policies, procedures and practices concerning your TCPA compliance relative to the use of autodialing and prerecorded voice technology now, and at any time during the preceding three years. Your answer should include relevant persons in your legal, compliance, and risk management departments.

**RESPONSE: Georgia Power objects to Interrogatory No. 7 because it seeks information irrelevant to the issues in this case. Georgia Power did not make any voice calls or send any pre-recorded voice message to the Phone Number. As such, discovery concerning Georgia Power's policies and procedures for pre-recorded voice messages is irrelevant and overly broad, and responding to it thereby unduly burdensome, and not proportional to the needs of this case**

**Georgia Power further objects to this Interrogatory because of Plaintiff's defining of "Predictive Dialer," "Auto Dialer," and "Dialer" to include any "dialing system, automated system without human intervention, outbound calling system that automatically dials from**

a list of telephone numbers." An "automatic telephone dialing system," as used in the TCPA, is a term of art and its definition is a matter of statutory interpretation. The Supreme Court of the United States, in *Facebook v. Duguid*, 141 S. Ct. 1163 (2021), held an automatic telephone dialing system is one that "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. Georgia Power will apply that definition in responding to this Interrogatory.

Georgia Power further objects to this Interrogatory as it is overbroad. Plaintiff requests information relating to the three years prior to the filing of this suit, but all of the text messages alleged in the complaint were sent from October 2018 to November 2018. Therefore, Plaintiff's request for information concerning Georgia Power's practices outside of that limited time period is unduly burdensome and seeks irrelevant information. In addition, the Interrogatory does not lend itself to materials that govern specific behavior that could be subject to this suit. The Interrogatory seeks a broad swath of information that does not address specific scenarios, such as text messages for PrePay accounts (which are the only communications at issue here). The identities of every single person who has had a hand in formulating, supervising, or enforcing Georgia Power's policies or procedures relative to the use of autodialers—which Georgia Power did not use—and pre-recorded voice messages— which Georgia Power did not send here—is not likely to lead the discovery of relevant information. As such, this request is drafted in a manner to necessarily avoid being tailored or proportional to the needs of the case.

11

Georgia Power further objects because this Interrogatory impermissibly shifts the burden of proof. Georgia Power has no obligation to prove compliance with the TCPA, and Plaintiff bears sole responsibility for proving Georgia Power's non-compliance with the TCPA. As such, general, non-specific practices that address compliance with the TCPA are simply irrelevant. Georgia Power also objects because this request is not in any way tailored to needs of this case, making it unduly burdensome, overly broad, and not proportional to the needs of the case. More specifically, this Interrogatory refers to a portion of the TCPA which is in no way related to this case. Accordingly, *any* discovery into compliance with a portion of the TCPA not at issue here is necessarily irrelevant, overly broad, unduly burdensome, and not proportional to the needs of this case.

8.    Describe the dialer equipment, how it works (from start to finish) and calling procedures used by your employees, or by a third party marketing firm to text Mr. Franklin's cellphone.

RESPONSE: Georgia Power objects to Interrogatory No. 8 to the extent it is predicated upon erroneous assumptions or to the extent it states incorrect facts. Georgia Power did not make any voice calls to the Phone Number, nor are any such calls alleged in the Complaint. Further, Georgia Power did not engage a marketing firm to make any calls or send any messages to the Phone Number, nor is there any allegation of the use of a marketing firm in the Complaint.

Georgia Power also objects to Plaintiff's use of the term "dialer" and incorporates its objection to that term stated in response to Interrogatory No. 7.

Subject to and without waiving these objections, Georgia Power incorporates by reference its objections and response to Interrogatory No. 2.

9.      State and describe in detail all steps, monies paid, mediums, and services used to advertise the products and services of Defendant GPC to include the name, address, and phone number of any service providers in the 4 years prior to filing of this lawsuit.

**RESPONSE: Georgia Power objects to Interrogatory No. 9 as it is overbroad and not tailored to the needs of this litigation. To start, no allegation of marketing exists in the Complaint. As such, *any* discovery into marketing efforts by Georgia Power is irrelevant and overly broad, and responding to it thereby unduly burdensome, and not proportional to the needs of this case. In that light, information concerning all of Georgia Power's marketing efforts—such as mail or television—are wholly irrelevant to the issue in this case to an extreme degree. Even if the Interrogatory had been more narrowly tailored to telephonic marketing, the Interrogatory would nevertheless seek irrelevant information. How much Georgia Power paid to advertise its products has nothing to do with whether a violation of the TCPA occurred. Neither do the mediums through which Georgia Power chose to advertise its products have any bearing on whether a violation of the TCPA has occurred. Additionally, as Georgia Power did not use a marketing firm to make any call or send any message to the Phone Number, and no such allegation is made in the Complaint, the request for information concerning the services Georgia Power has used to market its services and the providers with which it has contracted for that purpose similarly render this**

13

**Interrogatory overly broad and responding to it thereby unduly burdensome and not proportional to the needs of this case. This case deals solely with text messages sent to the Phone Number related to a PrePay account, not marketing. Even tailored to that scope, the amount paid by Georgia Power for any marketing service could never be relevant to any element of any action or defense before the Court.**

10.     Describe the business rules to initiate calls from your dialer system now, and during the preceding four years. Also, state who, your third party dialer system is contracted with, and name of the system.

**RESPONSE:  Georgia Power objects to Interrogatory No. 10 to the extent it assumes erroneous facts or to the extent it misstates facts. Georgia Power did not make any voice calls to the Phone Number, nor are such voice calls alleged in the Complaint.**

**Georgia Power further objects to the Interrogatory because of Plaintiff's use of the term "dialer" and incorporates its objection to that term stated in response to Interrogatory No. 7.**

**Subject to and without waiving these objections, Georgia Power incorporates by reference its objections and response to Interrogatory No. 2.**

11.     Identify and name any servers, exchanges, modems, or other computer systems used to text Mr. Franklin's cellphone.

**RESPONSE:  Georgia Power incorporates by reference its objections and response to Interrogatory No. 2. Georgia Power further directs Plaintiff, pursuant to Rule 33(d), to the documents produced in response to Requests for Production Nos. 6 and 7.**

      a.      In regards to interrogatory #12, Describe in detail how the server, exchange, or modem works with the Companies internal calling system?

**RESPONSE: Georgia Power assumes the reference to "interrogatory #12" is intended to refer to Interrogatory No. 11. Subject to that understanding, Georgia Power objects to this Interrogatory to the extent it assumes erroneous facts or to the extent it misstates facts. There is no integration between the system described in response to Interrogatory No. 11 and Georgia Power's internal telephone system. Moreover, it is not possible for a system that solely permits calls internal to Georgia Power to be relevant in a lawsuit with a factual predicate that communications external to Georgia Power occurred. Additionally, Georgia Power did not use a "calling system" to send any messages to the Phone Number.**

12.      Please list, explain, and describe documents known to you or believed by you to exist concerning the communications and events described in Plaintiffs complaint or concerning the communications and events described in Plaintiffs complaint or concerning any event which is the subject of any defense you have raised to this lawsuit.

**RESPONSE: Georgia Power objects to Interrogatory No. 12 to the extent it seeks information already contained in Georgia Power's responses to Plaintiff's other**

interrogatories and requests for production. Georgia Power has produced or will produce information responsive to this Interrogatory in response to Plaintiff's other requests and interrogatories. Therefore, the information sought by this Interrogatory is just as easily accessed by Plaintiff as it is by Georgia Power, making this Interrogatory unduly burdensome, and therefore not proportional to the needs of this case under Rule 26(b).

Georgia Power further objects to this interrogatory to the extent it seeks information regarding Georgia Power's legal defenses and actions taken in contemplation of this lawsuit. Such information is protected by the attorney-client privilege or work product doctrine, as it would relate to actions made on advice of counsel or communications between Georgia Power and its counsel.

Finally, Georgia Power objects to this Interrogatory as an impermissible "blockbuster" request. Plaintiff is asking Georgia Power to assemble all of the information needed to support its defenses into a compilation of documents. Such "blockbuster" discovery requests do not comport with the goals of the rules of civil procedure. *See High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2011 WL 4036424, at *19 (D. Kan. Sept. 12, 2011) (disapproving of "blockbuster" interrogatories that "require the responding party to provide the equivalent of a narrative of its entire case together with identification of virtually all supporting evidence for each and every fact"); *Koster v. Landmark Am. Ins. Co.*, No. 5:14-CV-689-OC-37PRL, 2016 WL 3014605, at *4 (M.D. Fla. May 20, 2016).

13.     Please provide the manufacturer or program name of the auto dialer or predictive dialer you use to call Plaintiffs cellphone as alleged in Plaintiffs complaint.

**RESPONSE: Georgia Power objects to Interrogatory No. 13 to the extent it assumes erroneous facts or to the extent it misstates facts. Georgia Power did not make any voice calls to the Phone Number, nor are such voice calls alleged in the Complaint. Accordingly, discovery concerning voice calls is irrelevant and overly broad, and responding to it thereby unduly burdensome, and not proportional to the needs of this case. Georgia Power further objects to Interrogatory No. 13 due to Plaintiff's use of the terms "auto dialer" and "predictive dialer" and incorporates its objection to those terms stated in response to Interrogatory No. 7.**

**Subject to and without waiving these objections, Georgia Power did not us an automatic telephone dialing system, and accordingly there is no manufacturer or program name to provide in response to this Interrogatory.**

Objections and legal contentions tendered by counsel.

Respectfully submitted this 20th day of September, 2021.

17

/s/ M. Anne Kaufold-Wiggins
M. Anne Kaufold-Wiggins
Georgia Bar No. 142239
Email: awiggins@balch.com

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, GA 30308
Telephone:      (404) 261-6020
Facsimile:      (404) 261-3656

Jonathan P. Hoffmann
Email: jhoffmann@balch.com

**BALCH & BINGHAM LLP**
1901 6th Avenue North
Suite 1500
Birmingham, AL 35203
Telephone:      (205) 251-8100
Facsimile:      (205) 226-8799

*Attorneys for Defendant GEORGIA POWER COMPANY*

## **VERIFICATION**

I, JEREMY BOWDEN, pursuant to 28 U.S.C. § 1746, verify under penalty of perjury under the laws of the United States of America that the foregoing Response of Georgia Power Company to Plaintiff Ricky R. Franklin First Set of Interrogatories is true and correct.

Dated: 9/17/2021

Signature

Name: JEREMY BOWDEN
**Authorized   Representative   of   Georgia   Power**

Company

19

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by placing a copy of same in the United States Mail and United States Certified Mail, properly addressed and postage prepaid, on this the 20th day of September, 2021:

Ricky R. Franklin
708 Brambling Way
Stockbridge, Georgia 30281

/s/ Jonathan P. Hoffmann