IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RICKY R. FRANKLIN,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **GEORGIA POWER COMPANY,** ) <br> ) <br> **Defendant.** ) <br> ) | Civil Action File No. <br> **1:19-CV-03853** |

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Franklin's Complaint contains a sole count: a claim for a violation of 47 U.S.C. § 227(b)(1)(A). In *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021), the Supreme Court held a party can only violate 47 U.S.C. § 227(b)(1)(A) if it uses a device with "the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." In its Motion for Summary Judgment and Brief in Support (Doc. 44) ("Georgia Power's Motion"), Georgia Power established neither it nor its two relevant third-party vendors used equipment with the capacity to store or produce numbers using a random or sequential number generator here. Franklin's Response and Opposition to Defendant's Motion for Summary Judgment (Doc. 46) ("Franklin's Response") presents *no evidence* disputing this fact. That ends this case. Georgia Power is entitled to judgment as a matter of law.

## ARGUMENT AND CITATION OF AUTHORITY

I. **Franklin disputes facts not asserted, and the Court should deem Georgia Power's facts admitted.**

Franklin's responses do not "directly refute[ ]" Georgia Power's facts, state a valid objection to their admissibility, or point out that they are unsupported. LR 56.1(B)(2)(a)(2).[1] Indeed, his "disputes" address unmade assertions and immaterial facts. The Court should deem Georgia Power's facts admitted. *See id.*

A.  The Account

Franklin's first collection of facts (¶¶ 1–7 of the SUMF) is about the establishment of the Georgia Power PrePay account (the "Account") to which the phone number at issue in this case—(404) 287-4934 (the "Phone Number")—was associated. Franklin's sole response is "[he] does not and has never had a 'PrePay' account ending in 49222." Plaintiff's Response to Defendant's Statement of Undisputed Facts and Statement of Additional Facts ("Plaintiff's Facts"), attached to Plaintiff's Response as Exhibit A, at 2. But Georgia Power never stated Franklin had a PrePay account or was the holder of the Account. Georgia Power only said the

---

[1] Franklin also failed to comply with Local Rule 56.1(B)(2)(a) in responding to Georgia Power's Statement of Undisputed Material Facts (Doc. 44-1) (the "SUMF") by not providing "individually numbered, concise, nonargumentative responses corresponding to each of [Georgia Power's] numbered undisputed facts." LR 56.1(B)(2)(a)(1). Franklin also ignored ¶¶ 33 and 34 of the SUMF.

2

Phone Number was linked to the Account. Whether Franklin owned the Account does not "refute" any fact in the SUMF.

B.   The Account Preference for Text Messages

Franklin's second collection of facts (¶¶ 8–13 of the SUMF) deals with Georgia Power's receipt of consent to send text messages to the Phone Number. Here, Franklin states he "never signed up for a PrePay account" and asserts he did not own the Phone Number in 2016. Plaintiff's Facts at 3. But Georgia Power never stated Franklin gave consent to send messages to the Phone Number, only that the then-holder of the Phone Number did so. Whether Franklin owned the Phone Number or held the Account is immaterial to the consent argument raised in the Motion, which is premised solely on Georgia Power's good faith belief it had consent to send the messages due to it never receiving a revocation of the consent received from the holder of the Phone Number in 2016. *See* Georgia Power's Motion at 19–20 (discussing how a caller may have no indication of a phone number's reassignment and "Georgia Power continued to rely on the prior consent").[2] Franklin has not presented any evidence, or even attempted to claim, that he or the previous holder of the Phone Number ever revoked consent.

---

[2] As noted in both Georgia Power's Motion (at 18), and below, *see* Section V, *infra*, the Court need not even address the issue of reasonable reliance if it determines Georgia Power did not use an ATDS to send text messages to the Phone Number.

### C. Creating PrePay Account Notifications

Franklin's third collection of paragraphs (¶¶ 14–24 of the SUMF) relate to Georgia Power's notification system and its relationship with EnergyCom Network ("PayGo"). In response, Franklin reincorporates his earlier responses and asserts he was not enrolled in any kind of payment plan with Georgia Power. Again, Georgia Power never stated Franklin owned the Account, and it is immaterial because all messages sent to the Phone Number related to a PayGo-monitored prepay account.

### D. Pushing the Notification

The fourth collection (¶¶ 25-32 of the SUMF) deals with transmission of notifications by Twilio Inc. Franklin contests the declaration of Twilio's representative, Martin Price, suggesting it is not a declaration from Twilio, challenges Price's base of knowledge, and suggests Twilio stores numbers to be called at a later time. Each non-genuine dispute fails to refute Georgia Power's facts.

First, concerning Price's relationship to Twilio, Franklin asserts Price is with another company called "Solutions Engineering – Enterprise West," presumably because that is in Price's signature block at the end of the declaration. Plaintiff's Facts at 7. But "Solutions Engineering – Enterprise West" is simply the division of Twilio in which Price works. Paragraph 2 of the declaration states Price is "Director, Solutions Engineering, *with Twilio*." Declaration of Martin Price ("Twilio Dec."), attached to the SUMF as Exhibit F, at ¶ 2 (emphasis added).

4

Second, Franklin contends Price's lack of personal involvement with sending the text messages at issue (i.e., he did not "personally load or send messages on behalf of" Georgia Power) somehow weakens Price's declaration. Plaintiff's Facts at 7. But Price has personal knowledge of Twilio's systems and hardware. *See* Twilio Dec., SUMF Ex. F, at ¶ 3. That Price may not have personally input any information or personally directed the transmission of any messages does not detract from his knowledge of how the system works and how it worked *in this specific circumstance*.

Third, Franklin asserts that Twilio stores phone numbers to be called at a later time based on a purported printout from Twilio's website. To start, the printout does not support Franklin's assertion "Twillio [sic] stores and forwards telephone numbers to [be] called at a later time using lists." Plaintiff's Facts at 7. Instead, the printout states Twilio stores "message *bodies* and records," presumably for recordkeeping purposes. *See* Twilio Printout, attached to Franklin's Response as Exhibit E (emphasis added). The printout never calls out telephone number storage specifically or mentions using those "message bodies and records" to send future messages. Indeed, nothing in the printout refutes the statements from Price that "Twilio does not store or generate recipient phone numbers for the purpose of sending SMS messages through the Programmable SMS API" and "[t]he recipient phone number must be provided in every instruction for every message." Twilio

5

Dec., SUMF Ex. F, at ¶ 10. Moreover, the printout is not case specific. As Price makes clear in his declaration, Twilio provides services to Georgia Power through a "Programmable SMS API"—a custom, Georgia Power specific solution. Even assuming the Court could permissibly consider the printout as evidence,[3] it is contrary to nothing because it does not address the messaging that occurred here.

### E.     Contacts with the Phone Number

Franklin's final set of facts concerns contacts with the Phone Number (¶¶ 35–47 of the SUMF). First, Franklin asserts no messages were sent to *him* in 2016 and he did not own the Phone Number until 2018. Second, he disputes whether Georgia Power sent pre-recorded voice messages, citing a printout from Georgia Power's website. Plaintiff's Facts at 10.

First, Georgia Power never stated any messages were sent to Franklin in 2016. The facts are Georgia Power was sending text messages to the Phone Number in 2016 after the holder of the Phone Number consented to receive text message alerts.

Second, Georgia Power has shown it never sent a pre-recorded voice message to the Phone Number, nor did Georgia Power ever attempt to call or connect to the Phone Number with an audio message of any kind. Declaration of Jeremy Bowden

---

[3] Georgia Power objects to the unauthenticated printout, which lacks foundation. Fed. R. Civ. P. 56(c)(2); *see also id.* (requiring citation to the record).

6

("Georgia Power Dec."), attached to the SUMF as Exhibit C, at ¶¶ 26–27. The only messages at issue here are text messages.[4] Even Franklin's printout acknowledges a difference between *voice* messages and *text* messages. *See* Georgia Power Screenshot, attached to Plaintiff's Response as Exhibit D (discussing "pre-recorded alerts, calls and voicemails" as separate from "mobile communication tools and text messaging services").[5] As text messages are all that is at issue here, it is immaterial whether Georgia Power sends pre-recorded voice messages to other customers.

Franklin has not "directly refut[ed]" Georgia Power's facts, stated a valid objection to any fact's admissibility, or pointed out a lack of evidentiary support. As such, the Court should "deem each of [Georgia Power's] facts as admitted." LR 56.1(B)(2)(a)(2); *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *Selective Ins. Co. of Am. v. Russell*, No. 2:13-CV-00214-RWS, 2016 WL 4578143, at *2 (N.D. Ga. Mar. 29, 2016) (noting "[t]he failure to comply with local rule 56.1 is not a mere technicality").

---

[4] Georgia Power never suggested it does not send pre-recorded voice messages, only that it did not send any such messages here. *See* Georgia Power Dec., Ex. C at ¶ 27.

[5] Franklin appears to suggest there is such a thing as "pre-recorded text messages" that can violate the TCPA, if sent. *See* Plaintiff's Response at 3. Not so. Section 227(b)(1)(A) specifically—and only—refers to "prerecorded *voice*" calls. 47 U.S.C. § 227(b)(1)(A) (emphasis added). Tellingly, Franklin cites no authority for "pre-recorded text messages," which is unsupported by the statute's text.

**II. Franklin's "Statement of Additional Disputed Facts" fails to address the dispositive issue of whether Georgia Power used an automatic telephone dialing system and creates no genuine dispute of material fact.**

In addition to his responses to Georgia Power's facts, Franklin also presents his own "Statement of Additional Disputed Facts" containing four factual assertions. Plaintiff's Facts at 10–11. Georgia Power has responded to these in its contemporaneously filed Response to Plaintiff's Statement of Additional Disputed Facts, and incorporates those responses herein. As shown there, Franklin's first three facts are immaterial and the last untrue. Of primary importance here, no fact asserted by Franklin even addresses whether Georgia Power used an automatic telephone dialing system ("ATDS"), let alone creates a genuine dispute as to that dispositive issue. In short, Franklin has not created a genuine issue of material fact.

**III. The unrebutted evidence shows Georgia Power did not use an ATDS or send any artificial or prerecorded voice messages.**

Georgia Power did not violate the TCPA by sending text messages to the Phone Number. Again, Franklin's sole count claims Georgia Power violated § 227(b)(1)(A) by sending these text messages. But § 227(b)(1)(A) only prohibits making a call[6] using an ATDS or an artificial or prerecorded voice. As the

---

[6] Whether "call," as used in the TCPA, includes text messages has not been affirmatively established. *See* Motion at 17 n.7 (citing *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019)). Nonetheless, the TCPA only applies to "calls" made using an ATDS or a prerecorded or artificial voice. *See* 47 U.S.C. § 227(b)(1)(A).

8

undisputed facts show Georgia Power did neither here, summary judgment is appropriate. *See Ferguson v. Innovative Loan Servicing Corp.*, No. 1:18-cv-03071-ELR-LTW, 2020 WL 1467361, at *7 (N.D. Ga. Jan. 13, 2020) (recommending the grant of summary judgment where the plaintiff presented no evidence the defendant "used an ATDS or an artificial or prerecorded voice"), *report and recommendation adopted*, 2020 WL 1467254 (N.D. Ga. Feb. 4, 2020).

Concerning artificial or prerecorded voice calls, Franklin never alleges he received such a call, and the undisputed facts show Georgia Power made no such call to the Phone Number; Georgia Power never attempted to contact the Phone Number with a voice message. *See* Georgia Power Dec., SUMF Ex. C, at ¶ 27.[7]

Concerning whether Georgia Power used an ATDS, the Supreme Court recently held an ATDS *must* use a sequential or random number generator to either store or produce phone numbers. *Facebook*, 141 S. Ct. at 1167. The undisputed evidence shows Georgia Power's notification system does neither. Rather, every phone number used in the system must be manually entered, it is never produced or generated in any fashion. Georgia Power Dec., SUMF Ex. C, at ¶¶ 5, 14. All messages to manually entered phone numbers are then sent *individually* in targeted

---

[7] Franklin's sole retort that the text messages themselves qualify as prerecorded voice messages fails on its face. *See* Note 5, *supra*.

9

messages concerning specific events based on message-specific instructions. *Id.* at ¶¶ 20–21, 27–28; Text Messages, attached to the SUMF as Exhibit A; Twilio Dec., SUMF Ex. F, at ¶ 7. Random or sequential number generation is not used, and "[t]hat ends this case." *See Barry v. Ally Financial, Inc.*, No. 20-12378, 2021 WL 2936636, at *4 (E.D. Mich. July 13, 2021). Franklin's TCPA claim fails, and the Court should enter summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### IV. Twilio's customized programmable SMS API solution for Georgia Power is not an ATDS whether standing alone or combined with Georgia Power and PayGo's processes.

Franklin spends a significant portion of his Response in a misguided attack on Twilio's system. For instance, Franklin states Twilio "users are able to automate mass sms messages and notifications." Franklin Response at 7. Even if it were true that some Twilio users could send "mass sms messages," that does not make it so for Georgia Power, who cannot and does not send "mass sms messages." *See* Twilio Dec., SUMF Ex. F, at ¶ 6. Assuming that Georgia Power did, though, would not change the analysis, because the relevant question here is not whether a system can send "mass sms messages and notifications." Rather, the question posed is whether the system uses a random or sequential number generator to store or produce phone numbers. Simply stated, volume of message storage or production is not relevant under *Facebook*; only the manner of such storage or production matters.

10

Franklin goes on to suggest "[i]t is well established that Twillio [sic] uses a storing system and a sequencing of sending text messages for its customers like Defendant GPC." Franklin's Response at 8. Franklin does not cite any evidence for this bold allegation, only two unpublished district court decisions, neither of which actually support it. In the first, *Bauman v. Saxe*, the court was considering class certification and was recounting the plaintiffs' *allegations* against Twilio, not facts. *See* No. 14-cv-01125-RFB-Pal, 2019 WL 157923, at *1 (D. Nev. Jan. 10, 2019). And the second case, *Northrup v. Innovative Health Ins. Partners*, actually shows why the Court should grant Georgia Power's Motion, as the *Northrup* court granted summary judgment to the defendants *because* "undisputed record evidence show[ed] that . . . Twilio *cannot generate random or sequential numbers*," and therefore, its system was not "an ATDS." No. 8:17-cv-1890-T-36JSS, 2020 WL 906199, at *6 (M.D. Fla. Feb. 25, 2020) (emphasis added). Franklin's unsupported statement concerning Twilio's system does not create an issue of material fact. In fact, his case law proves the merits of Georgia Power's Motion.

Franklin's next Twilio-related argument states an entity cannot avoid liability under the TCPA "by dividing ownership of dialing equipment," and he makes another bald assertion that "hardware combined with software of Twillio [sic], proves clearly and unmistakably that the defendants [sic] system qualifies as an

11

automated system." Franklin's Response at 9. That is a *non sequitur*. Just because there cannot be a diffusion of responsibility by diffusion of tasks does not mean the combined system here is an ATDS. The undisputed evidence shows *no part* of Georgia Power's notification system can ever store or produce numbers to be dialed through random or sequential number generation. *See* Georgia Power Dec., SUMF Ex. C, at ¶¶ 25–26; Declaration of Jared Gilstrap ("PayGo Dec."), SUMF Ex. E, at ¶ 12; Twilio Dec. at, SUMF Ex. F, at ¶¶ 10–12. If none of the individual parts of the system meets (or could meet) any part of the statutory definition, then using them in concert cannot either: $0 + 0 + 0 = 0$.

Franklin also argues because Twilio's system purportedly *stores* numbers, it must be an ATDS. That is not the case. First, the undisputed evidence is that Twilio only sends a message after receiving a specific instruction that must contain the phone number to be messaged. Twilio Dec., SUMF Ex. F, at ¶ 6. No evidence of the "storage" referenced in the TCPA itself is before the Court. Additionally, the facetious argument that mere capacity to store numbers to call at a later date renders a system an ATDS, which "would capture virtually all modern cell phones," was specifically rejected by the Supreme Court in *Facebook*. 141 S. Ct. at 1171.

Here, Franklin cites footnote 7 of the *Facebook* opinion. In footnote 7, the Supreme Court suggested an ATDS might use a random number generator to pick

numbers to call from a preproduced list. *See id.* at 1172 n.7. Even assuming the Supreme Court intended footnote 7 to say all equipment that selects phone numbers from a preproduced list (regardless of the method) is an ATDS, no "preproduced list" of numbers to be called exists in this case. And there simply was no use of a sequential or random number generator to generate any such list or pick any numbers to be called. *Timms v. USAA Fed. Savs. Bank*, No. 3:18-cv-01495-SAL, 2021 WL 2354931, at *6-7 (D.S.C. June 9, 2021) (rejecting the plaintiff's argument based on footnote 7 of the *Facebook* opinion because "there is no evidence that the [system] randomly selected the dialing order of telephone numbers from the predetermined list" and "the 'preproduced list'…[was] not one that is 'sequentially generated and stored'") (emphasis in original).

Franklin's argument concerning "capacity" is similarly misplaced. Contrary to Franklin's assertion on page 11 of his Response, the Eleventh Circuit rejected a broad conception of "capacity" for purposes of the TCPA. *See Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1309 (11th Cir. 2020) (noting its agreement with the D.C. Circuit's rejection of a "far-reaching interpretation" of capacity). There is no evidence the system used here has such "capacity" in any event.[8]

---

[8] Similarly unsupported is Franklin's allegation that "every system has a random or sequential generator." *See* Franklin's Response at 12.

13

## V. Franklin fails to address the arguments Georgia Power actually made concerning consent and constitutionality, battling strawmen instead.

Franklin's two final points may be addressed briefly, and the Court need not reach them at all if it holds Georgia Power did not use and ATDS.

On consent, Georgia Power never suggested Franklin himself gave consent to receive text messages. Instead, undisputed evidence shows Georgia Power received consent to send messages to the Phone Number, which was never revoked by a communication to Georgia Power. *See* Georgia Power Dec., SUMF Ex. C, at ¶ 8.[9] That fits within the reasonable reliance, good faith standard the D.C. Circuit endorsed in *ACA Int'l v. FCC*, 885 F.3d 687, 707 (D.C. Cir. 2018).

Finally, Franklin does not address why the Supreme Court's conclusion in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), that the TCPA was unconstitutional as written did not render the entirety of the act unconstitutional as a content-based restriction on speech. *See generally Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020); *Creasy v. Charter Communications, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020). But

---

[9] Furthermore, it is undisputed Franklin never replied "Stop" to these messages or contacted Georgia Power in any way. Accordingly, Franklin lacks jurisprudential standing to bring this suit. *See ACA Int'l*, 885 F.3d at 705 (disapproving of a litigant who waited to initiate a lawsuit until after receiving numerous text messages intended for the previous subscriber of the phone number).

it did, and the Court should not hold Georgia Power liable for calls that took place while the TCPA was unconstitutional.

## CONCLUSION

For the reasons set forth above and in Georgia Power's Motion, Franklin has failed to create a genuine issue of material fact in this case, and Georgia Power is entitled to judgment as a matter of law.

[*Signature on Following Page*]

Respectfully submitted this 2nd day of December, 2021.

                        */s/ M. Anne Kaufold-Wiggins*
                        M. Anne Kaufold-Wiggins
                        Georgia Bar No. 142239
                        Email: awiggins@balch.com

                        **BALCH & BINGHAM LLP**
                        30 Ivan Allen Jr. Boulevard, N.W.
                        Suite 700
                        Atlanta, GA 30308
                        Telephone:  (404) 261-6020
                        Facsimile:  (404) 261-3656

                        Jonathan P. Hoffmann
                        (Admitted Pro Hac Vice)
                        Email: jhoffmann@balch.com

                        **BALCH & BINGHAM LLP**
                        1901 6th Avenue North
                        Suite 1500
                        Birmingham, AL 35203
                        Telephone:  (205) 251-8100
                        Facsimile:  (205) 226-8799

                        *Attorneys for Defendant Georgia Power Company*

## **CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D).

This 2nd day of December, 2021.

*/s/ M. Anne Kaufold-Wiggins*
M. Anne Kaufold-Wiggins
Georgia Bar No. 142239

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system and served via U.S. Mail First Class, postage prepaid mail and electronic mail to the following on this the 2nd day of December, 2021:

>Ricky R. Franklin, *pro se*
>708 Brambling Way
>Stockbridge, Georgia 30281

>*/s/ M. Anne Kaufold-Wiggins*
>M. Anne Kaufold-Wiggins
>Georgia Bar No. 142239